DJW/bh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

R&F, LLC,

                **Plaintiff,**

                                     Civil Action

v.

                                       No. 07-2175-JWL-DJW

BROOKE CORPORATION,

                **Defendant.**

### MEMORANDUM AND ORDER

       Pending before the Court is Defendant's Motion for Protective Order (doc. 18). Defendant requests that the Court "enter a protective order quashing R&F's discovery requests or substantially limiting discovery to the issue of arbitrability of the dispute in this action."[1] For the reasons set forth below the Court will deny the motion.

**I.**    **Nature of the Matter Before the Court and Background Information**

       This is a diversity action for breach of contract. The Complaint alleges that Plaintiff R&F, LLC and Defendant Brooke Corporation are parties to a franchise agreement dated June 15, 2001 ("June 15, 2001 Franchise Agreement").[2] Paragraph 9.12 of the Franchise Agreement provides that Plaintiff is required to submit any dispute arising out of the Franchise Agreement to mediation.[3]

       The Complaint also alleges that sometime after June 15, 2001, Plaintiff and Defendant entered into another franchise agreement with respect the assets of Kohn-Senf Insurance Agency

---

[1] Def.'s Mot. for Protective Order (doc. 18) at p.1.

[2] Compl. (doc. 1), ¶7.

[3] Def.'s Mot. to Compel Arbitration (doc. 6), ¶3.

and Bryant-Bond-Pyatt Insurance Agency.[4]  According to Plaintiff, the relevant terms and conditions of that agreement are the same as those contained in the June 15, 2001 Franchise Agreement.[5] Plaintiff contends that Defendant breached both of the franchise agreements.[6]

Defendant asserts that on January 2, 2003, Defendant assigned its rights and obligations under the June 15, 2001 Franchise Agreement to its wholly-owned subsidiary, Brooke Franchise.[7] Thereafter, Plaintiff purchased several insurance agencies from Defendant, and Plaintiff operated, and continues to operate, those agencies under the terms of the June 15, 2001 Franchise Agreement.[8]

Defendant also contends that in February 2003, Plaintiff and either Brooke Franchise or Brooke Credit Corporation (another subsidiary of Defendant) entered into several agreements relating to the operation of Plaintiff's franchise insurance agencies, including a Direct Bill Bonus Agreement, a Franchise Agent Line of Credit Agreement, and a Franchise Service Center Option Agreement (collectively the "Franchise-Related Agreements").[9]

On June 4, 2007, Defendant filed a Motion to Stay and for Order to Mediate and Compel Arbitration ("Motion to Compel Arbitration") (doc. 6).  In that motion, Defendant moves the Court to stay all proceedings in this action, order mediation of the dispute pursuant to the June 15, 2001 Franchise  Agreement,  and  compel  arbitration  of  the  dispute  under  the  Franchise-Related

---

[4]Compl. (doc. 1), ¶14.

[5]*Id.*

[6]*Id.*, ¶17.

[7]Def.'s Mot. to Compel Arbitration (doc. 6), ¶1.

[8]*Id.*, ¶2.

[9]*Id.*, ¶4.

Agreements.  More specifically, Defendant asserts that the June 15, 2001 Franchise Agreement contains a provision that Plaintiff "shall submit any dispute arising out of the Franchise Agreement to mediation."[10]  In addition, Defendant asserts that each of the three Franchise-Related Agreements refers to the June 15, 2001 Franchise Agreement[11] and each expressly provides for arbitration of "[a]ny issue, claim, dispute or controversy" that "arise[s] out of its connection with or relating to" the June 15, 2001 Franchise Agreement and/or "the relationship of the parties."[12]  Thus, Defendant contends that Plaintiff and Defendant are required to submit to mediation and arbitration any disputes arising out of the June 15, 2001 Franchise Agreement or relationship between the parties.

On July 16, 2007, Plaintiff filed a motion (doc. 12) seeking leave to conduct discovery relating to the Motion to Compel Arbitration.  On July 20, 2007, the Court granted Plaintiff's motion and granted Plaintiff leave "to conduct limited discovery of the issues of whether the parties agreed to arbitrate claims under the Franchise Agreement."[13]  The Court also stayed briefing on the Motion to Compel until completion of the discovery.

On July 23, 2007, Plaintiff served its First Set of Interrogatories and First Set of Requests for Production of Documents on Defendant.  On August 6, 2007, Defendant filed the instant Motion for Protective Order.  Defendant contends that it is entitled to a protective order relieving it of the obligation  to respond to Plaintiff's interrogatories and requests for production because:

> [Plaintiff] R&F's discovery requests are overly broad and completely irrelevant to
> the sole issue in front of the court:  arbitrability of the underlying claim under the

---

[10]*Id.*, ¶3.

[11]*Id.*, ¶5.

[12]Def.'s Mem. in Supp. of Mot. for Protective Order (doc. 19) at p.3.

[13]July 20, 2007 Order (doc. 13).

Federal Arbitration Act . . . . The issues involved in motions to arbitrate are whether a valid arbitration agreement exists and whether plaintiff's claim falls within the terms of the arbitration provision. R&F's proposed discovery requests go well beyond the limited issues of arbitrability.[14]

Plaintiff filed its opposition to the Motion on August 7, 2007 (doc. 21), and Defendant filed a reply brief on August 10, 2007 (doc. 22).

Despite having filed its Motion for Protective Order, which under D. Kan. Rule 26.2 stayed the discovery,[15] Defendant proceeded to serve responses and objections to the discovery requests on August 22, 2007. Five days later, on August 27, 2007, Plaintiff filed a pleading entitled "Plaintiff's Supplemental Submission in Opposition to [Defendant] Brooke's Motion for Protective Order" (doc. 24), to which it attached Defendant's responses and objections to Plaintiff's discovery requests, along with copies of the three documents that Defendant produced. Thereafter, on August 29, 2007, Defendant filed a brief (doc. 25) in opposition to Plaintiff's Supplemental Submission, in which Defendant asks the Court to (1) reject the Supplemental Submission as not authorized by Court rules, and (2) grant the Motion for Protective order.

## II.    Plaintiff's Supplemental Submission in Opposition to Defendant's Motion for Protective Order

As a threshold matter, the Court must decide whether to consider Plaintiff's Supplemental Submission. Defendant is correct in asserting that neither the Federal Rules of Civil Procedure nor the Rules of Practice and Procedure of this Court authorize the filing of supplemental or sur-reply briefs, at least without leave of court. At the same time, however, the Court recognizes that

---

[14]Def.'s Mem. in Supp. of Mot. for Protective Order (doc. 19), p. 1.

[15]D. Kan. Rule 26.2 provides that "[t]he filing of a motion for a protective order pursuant to Fed. R. Civ. P. 26(c) . . . shall stay the discovery at which the motion is directed pending order of the court."

Plaintiff's Supplemental Submission contains updated information that is material to the pending motion before the Court.  The Court will therefore retroactively grant Plaintiff leave to file the Supplemental Submission and will consider it in ruling on the Motion for Protective Order.

## III.     Analysis

### A.     The Standard for Determining Relevance

As noted above, Defendant contends that Plaintiff's discovery requests are overly broad and completely irrelevant to the sole issue in front of the court, i.e., whether Plaintiff's claims are subject to arbitration under the Federal Arbitration Act.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[16]  Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[17]  Consequently, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[18]  The question of relevancy naturally "is to be more loosely construed at the discovery stage than at the trial."[19]  A party does not have to prove a prima

---

[16]Fed. R. Civ. P. 26(b)(1).

[17]*Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D. Kan. 2004); *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).

[18]*Cardenas,* 232 F.R.D. 377, 382 (D. Kan. 2005).

[19]*Mundy v. Indian Hills Country Club*, No. 06-2268-KHV, 2007 WL 852619, at *5 (D. Kan. Mar. 16, 2007) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal* (continued...)

face case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence.[20]

The parties agree that the primary issues before the Court on Defendant's Motion to Compel Arbitration are whether a valid agreement to arbitrate exists between Plaintiff and Defendant and whether Plaintiff's breach of contract claims fall within the terms of that arbitration agreement. Thus, Defendant's Motion for Protective Order should be denied if Plaintiff's interrogatories and requests seek information relevant to those issues and if the discovery requests appear reasonably calculated to lead to the discovery of admissible evidence regarding whether the parties have agreed to arbitrate the disputes involved in this case and whether Plaintiff's claims fall within the scope of the arbitration agreement.

###    B.    Plaintiff's Requests for Production

####    1.    First Requests for Production No. 1, 2, and 11

After filing its Motion for Protective Order, Defendant proceeded to respond to First Requests for Production  No. 1 and 2, which ask Defendant to produce (1) all documents regarding the assignment referenced in paragraph 4 of Mr. Bailey's affidavit (i.e., the January 2, 2003 assignment of Defendant's rights and obligations under the June 15, 2001 Franchise Agreement to Brooke Franchise), and (2) all documents regarding communications with Plaintiff about the assignment. Defendant asserted no objections and indicated that it would produce all non-privileged responsive documents.

---

[19](...continued)
*Practice and Procedure* § 2008 at 99 (2d ed. 1994)).

[20]*Mackey v. IBP, Inc.*, 167 F.R.D. 186, 193 (D. Kan. 1996).

6

Defendant also responded to First Request No. 11, which asked Plaintiff to produce all agreements between Defendant, Brooke Credit, or Brooke Franchise and Plaintiff, in which Plaintiff "agreed to arbitrate claims." Defendant made no objection to the interrogatory and responded: "Brooke previously produced responsive documents."

Because Defendant proceeded to respond to First Requests No. 1, 2, and 11 without any objections, the Court finds that the Motion for Protective Order is moot at to them. The Motion for Protective Order will therefore be denied as moot as to First Requests No. 1, 2, and 11. To the extent Defendant has not already done so, it shall produce all non-privileged documents responsive to First Requests No. 1, 2, and 11. Defendant is reminded that Federal Rule of Civil Procedure 34(b)(I) requires that Plaintiff "produce them as they are kept in the usual course of business" or "organize them to correspond with the categories in the request."

### 2. *First Requests for Production No. 3-10 and 12*

In its responses to the remaining Requests for Production, i.e., Requests No. 3-10 and 12, Defendant objected to each request on the grounds that each is overly broad and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Defendant stated:

> For the reasons set forth in [Defendant] Brooke's Motion for Protective Order, the information sought through this Request is unrelated to this litigation and the limited discovery allowed in the Court's July 20, 2007 Order and the limited issue or arbitrability presently before the Court.[21]

First Requests for Production No. 3-10 seek production of documents regarding: (1) the negotiation of the June 15, 2001 Franchise Agreement and any amendments; and (2) the negotiation of each of the three Franchise-Related Agreements; and (3) any amendments to each of the three

---

[21]Def.'s Resp. to Pl.'s First Request for Produc., attached as Ex. 1 to Pl.'s Supp. Submission in Opp. to Def's Mot. for Protective Order (doc. 24).

Franchise-Related Agreements. First Request for Production No. 12 seeks all documents regarding communications between Defendant, Brooke Credit or Brooke Franchise, and Plaintiff "about arbitration and/or mediation of claims."[22]

Plaintiff argues that the parties never agreed in the June 15, 2001 Franchise Agreement to *arbitrate* any disputes, but only *to mediate* disputes. Thus, according to Plaintiff, Defendant must be contending that Plaintiff *subsequently* agreed with Defendant to arbitrate any claims arising out of the June 15, 2001 Franchise Agreement. For Defendant's Motion to Compel Arbitration to have merit, then, Defendant must establish that the June 15, 2001 Franchise Agreement was amended to include an arbitration agreement. Plaintiff suggests that Defendant is trying to show that the parties subsequently agreed to arbitrate by relying on the assignment of the Franchise Agreement and on the three Franchise-Related Agreements. In other words, Defendant is attempting to go beyond the four corners of the June 15, 2001 Franchise Agreement and to rely on extrinsic evidence to prove an agreement to mediate. Plaintiff argues that it has the right to conduct discovery into that extrinsic evidence, which would include discovery about the negotiation of, and any amendments to, the June 15, 2001 Franchise Agreement and the Franchise-Related Agreements to determine whether the parties intended to enter into an agreement to mediate their disputes.

The Court finds Plaintiff's arguments persuasive. Whether a written agreement is ambiguous is a matter of law.[23] Where the contract is ambiguous, the intent of the parties is ascertained by considering the language used, circumstances existing when the agreement was made, the object

---

[22]*Id.*

[23]*Investcorp, L.P. v. Simpson Inv. Co., L.C.*, 267 Kan. 840, 847, 983 P.2d 265 (1999).

8

sought, and other circumstances that tend to clarify the parties' intentions.[24]  These rules apply to agreements to arbitrate.[25]

The Court need not decide whether the June 15, 2001 Franchise Agreement and any of the other agreements that Defendant is relying on to support its assertion of arbitration are ambiguous as a matter of law.  That issue will be decided by the District Judge at the appropriate stage of this litigation.  For purposes of ruling Defendant's Motion for Protective Order, the Courts finds that there is a genuine dispute between parties as to whether the agreements are ambiguous.  The Court therefore holds that Plaintiff should be entitled to conduct discovery about the extrinsic evidence that may reveal the parties' intent to arbitrate.

The Court holds that First Requests No.  3-10 and 12 are not overly broad and that they seek relevant information which may lead to the discovery of admissible evidence regarding the parties' intent to agree to arbitration.  Accordingly, the Court overrules the overly broad and relevance objections asserted by Defendant in response to these requests and finds that there is no basis for entering the protective order requested by Defendant.  Within **twenty (20) days** of the date of this Order, Defendant shall serve amended responses to First Requests No. 3-10 and 12 and shall produce all documents responsive to those requests.

## C.   Plaintiff's Interrogatories

Plaintiff's First Interrogatories No. 1-5 ask Defendant to identify the persons with knowledge regarding (1) the negotiation of the June 15, 2001 Franchise Agreement and the three Franchise-

---

[24]*Jayne v. Kennedy & Coe, L.L.C.*, 26 Kan. App. 2d 121, 123, 978 P.2d 951 (1999).

[25]*Patrick Higgins & Co., Inc. v. Brooke Corp.*, No. 06-4111-JAR, 2007 WL 2317123, at *6, 10 (Aug. 9, 2007).

Related Agreements, and (2) the assignment of the June 15, 2001 Franchise Agreement. First Interrogatory No. 6 asks Defendant to identify each communication between Plaintiff and Defendant, Brooke Franchise or Brooke Credit "regarding arbitration or mediation of claims" and to identify (1) persons with knowledge of such communications, and (2) documents regarding the communications. Defendant served objections to these interrogatories and did not provide any information in response. Defendant's objections were the same as those it asserted in response to Requests for Production No. 3-10 and 12.

For the same reasons discussed above with respect to Requests No. 3-10 and 12, the Court finds that these interrogatories are not overly broad and that they seek relevant information about the  arbitrability of Plaintiff's claims and are reasonably calculated to lead to the discovery of admissible evidence about arbitrability. The Court therefore overrules Defendant's objections to these interrogatories and denies the Motion for Protective Order with respect to them. Defendant shall serve amended responses to First Interrogatories No. 1-6 within **twenty (20) days** of the date of this Order.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Protective Order (doc. 18) is denied.

**IT IS FURTHER ORDERED** that within **twenty (20) days** of the date of this Order, Defendant shall serve amended responses to Plaintiff's First Interrogatories No. 1-6 and First Requests for Production No. 3-10 and 12, and shall produce all documents responsive to those requests.

**IT IS FURTHER ORDERED** that each party shall bear its own attorney fees and expenses incurred in connection with the filing of this Motion for Protective Order.

10

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 24th day of September 2007.

s/David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties